Argued and submitted September 3, 1986, affirmed February 3, 1987

## SOUTHERN PACIFIC
## TRANSPORTATION COMPANY,
*Appellant,*

*v.*

## DEPARTMENT OF REVENUE,
*Respondent.*

(TC 1093, 1189, 1282, 1362)
(SC S32370, S32371, S32372, S32373)
(Cases Consolidated)

732 P2d 18

John H. Doran, Portland, argued the cause for appellant. With him on the briefs were George L. Kirklin and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Elizabeth S. Stockdale, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, Salem.

LENT, J.

**LENT, J.**

In these consolidated actions, Southern Pacific Transportation Company (Southern Pacific) challenges the Department of Revenue's (the Department) assessments of Southern Pacific's Oregon property for the years 1976-79. We held in a previous decision in this case that the property of Southern Pacific's subsidiary, St. Louis & Southwestern Railroad (also known as, and hereinafter denominated, Cottonbelt), was included in Southern Pacific's property for the purpose of the unit valuation method employed by the Department to make these assessments. *Southern Pacific Trans. Co. v. Dept. of Rev.,* 295 Or 47, 664 P2d 401 (1983). We remanded the case to the Tax Court so that it could consider whether the valuation and apportionment formulas, which were not before us, should be adjusted in light of our decision. 295 Or at 65. The Tax Court concluded that no adjustment was necessary. *Southern Pacific Trans. Co. v. Dept. of Rev.,* 10 OTR 80 (1985). We affirm.

I.

The relevant facts are not in dispute and are set forth in our previous opinion. For convenience, we will restate them in somewhat abbreviated form.

A.

Southern Pacific is a railroad that operates in Oregon, California, Nevada, Utah, Arizona, New Mexico, Texas and Louisiana. It has three principal routes: Portland to Los Angeles; San Francisco to Ogden, Utah; and Los Angeles to New Orleans. At Corsicana, Texas, and Shreveport, Louisiana, Southern Pacific connects with Cottonbelt. Cottonbelt is a railroad operating in Texas, Louisiana, Arkansas, Tennessee, Missouri and Illinois. During the time at issue in this case, Cottonbelt was almost wholly owned by Southern Pacific.[1] In addition, Cottonbelt's principal officers and nearly all its directors were officers or employees of Southern Pacific, were selected by Southern Pacific, and reported to Southern Pacific.

The most significant distinction between Cottonbelt

---

[1] Southern Pacific's ownership of Cottonbelt was at all times greater than 98 percent but less than 100 percent.

and Southern Pacific is in their respective functions in the continental rail transportation system. Cottonbelt is primarily a "bridge" railroad for other carriers. That is, most of the traffic over Cottonbelt's routes originates and terminates with other railroads. In contrast, 90 percent of the traffic over Southern Pacific's routes either originates or terminates with Southern Pacific. The distinction is significant because "bridge" railroads tend to be much more profitable. For example, during 1978 the *net* railway operating income of Cottonbelt was 91 percent of that of Southern Pacific, although Cottonbelt's gross income was only 14 percent, and its total assets only 18 percent, of Southern Pacific's.

B.

The Department assesses the property of designated utilities, including railroads, and apportions this assessment among Oregon's counties. ORS 308.505 to 308.665. In making an assessment, the Department is permitted to value the utility's property, both within and without Oregon, as a unit. ORS 308.555; *see also* ORS 308.550(1)-(2). The Department must then apportion a "fair" amount of the unit value to Oregon. *See* ORS 308.550(2), 308.555.

For the years 1976-79, the Department included Cottonbelt in the unit for assessing Southern Pacific's property.[2] Southern Pacific filed complaints challenging the inclusion of Cottonbelt, and the complaints were consolidated for trial. In addition to challenging the composition of the unit, the complaints also took issue with the methods used by the Department to determine the value of the unit and to determine the portion of that value apportionable to Oregon.

Originally, the Tax Court largely found in favor of Southern Pacific. *Southern Pacific Transportation v. Dept. of Rev.,* 9 OTR 481 (1982). The court excluded Cottonbelt from the unit. The court rejected the Department's valuation method in favor of a method that valued Southern Pacific's property as a weighted average of its capitalized income (assigned a weight of 67 percent) and its stock and debt

---

[2] The Department's inclusion of Cottonbelt in the unit for valuing Southern Pacific's property began in 1972. Southern Pacific did not challenge the inclusion for the years prior to 1976.

(assigned a weight of 33 percent). Finally, the court apportioned the unit value to Oregon on the basis of a three-factor formula (hereinafter the NATA formula)[3] that assigned approximately 40 percent weight to property investment, approximately 45 percent weight to ton-miles of freight, and approximately 15 percent weight to originating or terminating freight tonnage. The actual weight assigned varied slightly for each of the four years. The use of the NATA formula resulted in the apportionment of approximately 9 percent of the unit value to Oregon.[4]

The Department appealed only the exclusion of Cottonbelt from the valuation unit; Southern Pacific did not cross-appeal. We reversed and held that Cottonbelt was properly included in the unit. We were, however, concerned that the inclusion of Cottonbelt within the unit might produce a result that was statutorily and constitutionally impermissible if the valuation and apportionment formulas, which were not before us in that appeal, were not adjusted to reflect the characteristics of the expanded unit.

"[T]he Tax Court carefully tailored the methods for valuation and allocation to the character of the enterprise included in the unit. The weight assigned each element in the allocation reflected the proportional operating expenses associated with that element. To reverse the finding of the valuation unit while leaving the rest of the judgment untouched might introduce unfairness, because the three findings are interconnected. Although Southern Pacific did not cross-appeal, on

---

[3] The "NATA" formula was developed by the Committee on Railroad Allocation of the National Association of Tax Administrators (NATA). The formula is a 1949 modification of a formula first proposed in 1947. The formula apportions unit value by means of a weighted average of "property," "line-haul," and "terminal activity" factors. Stated generally, the property factor is the ratio of investment in tracks and equipment in a particular state to such investment in the valuation unit; the line-haul factor is the ratio of ton-miles of revenue freight in the state to ton-miles of revenue freight in the valuation unit; the terminal activity factor is the ratio of freight tonnage originating or terminating in the state to freight tonnage originating or terminating in the valuation unit. The weight assigned to each factor reflects the relative operating expenses associated with each factor. The apportionment percentage, *i.e.,* the percentage of the value of the unit allocable to a particular state, is the weighted average of the three factors.

[4] The Tax Court subsequently issued a decree determining that the true cash value of Southern Pacific's Oregon property was $45,307,000 on January 1, 1976; $50,121,000 on January 1, 1977; $56,320,000 on January 1, 1978; and $48,424,000 on January 1, 1979.

remand the Tax Court shall consider whether the valuation and allocation formulae should be adjusted."

295 Or at 65. On remand, the parties agreed that no adjustment in the valuation formula was necessary, and the Tax Court concluded that no adjustment in the apportionment formula was necessary. *Southern Pacific Trans. Co. v. Dept. of Rev.*, 10 OTR 80 (1985).[5]

Southern Pacific has appealed, assigning as error the Tax Court's failure to adjust the apportionment formula and, in particular, the Tax Court's failure to adopt the adjusted apportionment formula proposed by Southern Pacific's expert witness, Dr. Arthur Schoenwald.[6] Dr. Schoenwald used the NATA formula that was employed by the Tax Court, but weighted Cottonbelt's contribution to the factors in the formula in order to offset Cottonbelt's assertedly disproportionate contribution to the value of the system.[7]

## II.

As noted above, ORS 308.555 permits the Department to determine the true cash value of Southern Pacific's Oregon property by apportioning the total value of Southern Pacific's property both within and without Oregon. We already have determined that Southern Pacific's property for the purpose of this unit valuation includes the property of

---

[5] On November 7, 1985, the Tax Court entered a decree determining that the true cash value of Southern Pacific's Oregon property was $60,435,000 on January 1, 1976; $68,829,000 on January 1, 1977; $72,713,000 on January 1, 1978; and $64,262,000 on January 1, 1979. The values determined by the Tax Court for each year prior to the inclusion of Cottonbelt were, respectively, $45,307,000, $50,121,000, $56,320,000 and $48,424,000. This represents an increase of approximately $15 million to $19 million for each year.

[6] Southern Pacific also assigned as error the Tax Court's denial of its motion to reopen "the proceedings herein for the taking of additional evidence on the question of the appropriate allocation factors to be applied to plaintiff's system value." Southern Pacific sought to introduce into evidence the report of Dr. Schoenwald on adjustments to the apportionment formula. The parties stipulated at oral argument on this appeal that we could consider this report as part of the record. Other than this report, Southern Pacific has not indicated what additional evidence on the issue of apportionment it would have introduced had the proceedings been reopened.

[7] Dr. Schoenwald determined the following values for Southern Pacific's Oregon property: $48,418,000 in 1976; $53,438,000 in 1977; $53,001,000 in 1978; $44,873,000 in 1979. These values are similar to those determined in the Tax Court's original decree prior to this court's inclusion of Cottonbelt in the valuation unit. *See* note 4, *supra.*

Cottonbelt. Because the parties have stipulated that the valuation formula employed by the Tax Court is proper, the only issue before us is the apportionment of the value of the combined Southern Pacific-Cottonbelt unit to Oregon.

ORS 308.550(2) provides that if an apportionment of railroad value based on mileage of track cannot be made "fairly," the Department "may use any other reasonable method to determine the proper proportion of the entire property assessable for taxation in this state." ORS 308.555 states that the goal of the unit valuation method is to ascertain the "fair proportion" of the property of the company in Oregon. We previously have noted that these rather vague directives do little to define the limits of state taxing authority and are essentially a codification of the limits imposed by the due process and commerce clauses of the United States Constitution. *See Southern Pacific Trans. Co. v. Dept. of Rev.*, 295 Or 47, 57 & n 11, 64, 664 P2d 401 (1983); *see also Budget Rent-A-Car v. Multnomah Co.*, 287 Or 93, 104-05, 597 P2d 1232 (1979).

The limits imposed by the commerce clause and the due process clause of the fourteenth amendment are much alike. *Norfolk & Western R. Co. v. Missouri Tax Comm.*, 390 US 317, 323-25, 88 S Ct 995, 19 L Ed 2d 1201 (1968). There the Court stated:

> "The problem under the Commerce Clause is to determine 'what portion of an interstate organism may appropriately be attributed to each of the various states in which it functions.' * * * So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State. * * * Those requirements are satisfied if the tax is fairly apportioned to the commerce carried on within the State."

390 US at 325 n 5 (quoting *Ott v. Mississippi Valley Barge Line Co.*, 336 US 169, 174, 69 S Ct 432, 93 L Ed 585 (1949) (quoting *Nashville, C. & St. L. R. Co. v. Browning*, 310 US 362, 365, 60 S Ct 968, 84 L Ed 1254 (1940)); *see also R.J. Reynolds Tobacco Co. v. Durham County,* ___ US ___, 107 S Ct 499, 515, 93 L Ed 2d 449 (1986) (" [I]t is well settled that a state tax comports with the Due Process Clause if 'the taxing power exerted by the state bears fiscal relation to protection, opportunities and

benefits given by the state.' ") (quoting *Wisconsin v. J.C. Penney Co.*, 311 US 435, 444, 61 S Ct 246, 85 L Ed 267 (1940)). In addition to fair apportionment, the commerce clause may also require that a state's apportionment formula not differ substantially from apportionment formulas used by other states. Outside the context of international commerce, however, the requirement of similarity in apportionment formulas is generally satisfied by satisfying the fair apportionment requirement. *Cf. Container Corp. v. Franchise Tax Bd.*, 463 US 159, 170-71, 103 S Ct 2933, 77 L Ed 2d 545 (1983) (involving state income taxation of multinational corporations).

■ The constitutional requirement of fair apportionment in property taxation means that a state may not tax extraterritorial value. *See Norfolk & Western R. Co. v. Missouri Tax Comm., supra*, 390 US at 324. Put the other way, a state may tax

> "the value, appropriately ascertained, of tangible assets permanently or habitually employed in the taxing State, including a portion of the intangible, or 'going-concern' value of the enterprise. * * * The value may be ascertained by reference to the total system of which the intrastate assets are a part. * * * '[T]he tax may be made to cover the enhanced value which comes to the [tangible] property in the State through its organic relation to the [interstate] system."

390 US at 323-24.

■■ The constitutional limits on state taxation of interstate corporations are not stringent; the states are given wide latitude in the use of formulas to measure the value of property located within their borders. *Id.* at 324. An apportionment formula need only bear "a rational relationship, both on its face and in its application, to property values connected with the taxing State." *Id.* at 325. The reason for this latitude is the difficulty of making precise measurements of the value of the parts of a unit.[8] *Id.* at 324. This difficulty becomes even more pronounced when the property being valued is that of a corporation in a highly regulated industry, such as the railroad industry, for which market values are generally not available.

---

[8] State income taxation of interstate and multinational corporations receives like analysis from the Supreme Court of the United States. *See Container Corp. v. Franchise Tax Bd.*, 463 US 159, 164, 103 S Ct 2933, 77 L Ed 2d 545 (1983); *Mobil Oil Corp. v. Commissioner of Taxes*, 445 US 425, 438, 100 S Ct 1223, 63 L Ed 2d 510 (1980).

Of course, this court makes a more searching review of the factual bases of an apportionment formula than does the U.S. Supreme Court. We exercise *de novo* review. ORS 19.125(3), 305.445. To prevail, Southern Pacific need only prove to us by a preponderance of the evidence, ORS 305.427, that the assessment of its Oregon property was "unfair," *i.e.,* that Oregon has taxed extraterritorial value. In practice, however, Southern Pacific has a difficult burden of proof because of the difficulty of isolating the value of its Oregon property from the value of its property in other states. While it need not prove that the assessed value of its Oregon property bears no "rational relationship" to its "true" value, the very difficulty of ascertaining that "true" value makes our analysis in practice not so very different from that that the U.S. Supreme Court would employ.

## III.

Southern Pacific argues that the NATA apportionment formula employed by the Tax Court must be adjusted to take into account the relatively greater profitability of Cottonbelt. Because the valuation method employed by the Tax Court was based primarily upon capitalized income, the inclusion of the much more profitable Cottonbelt in Southern Pacific's valuation unit substantially increased the value of the unit. Cottonbelt's contribution to property investment, line-haul tonnage, and terminal tonnage — the factors employed in the NATA apportionment formula — was not in proportion to its contribution to income. The result was an increase in the assessed value of Southern Pacific's Oregon property of approximately 30-40 percent in each of the four years at issue.[9]

The fundamental flaw in Southern Pacific's argument is that it assumes that the profitability of Cottonbelt can be ascertained without reference to Southern Pacific. A determination that an entity is a part of a unit is a determination

---

[9] *See* notes 4 & 5, *supra.* The magnitude of this increase prompted us to remand this case to the Tax Court so that it could adjust the valuation and apportionment formulas if necessary to maintain the fairness of the assessment. *Southern Pacific Trans. Co. v. Dept. of Rev.,* 295 Or 47, 65, 664 P2d 401 (1983). We did not, however, direct the Tax Court to adjust the valuation and apportionment formulas so as to eliminate the increase. The increase alone is irrelevant to the fairness of the assessment.

that the operation of that entity is integrated with the remainder of the unit in such a way that it is impossible to ascertain sufficiently the separate value of the entity apart from the unit. The profitability of "bridge" railroads such as Cottonbelt depends upon integration with "terminal" railroads such as Southern Pacific. The decision to include them in a unit is a decision to abandon efforts at separate valuation.

■ Value assessment of the parts of a unit is necessarily a somewhat arbitrary process that must rely upon factors that are quantifiable: *e.g.,* miles of track, terminal activity, track usage and property investment. *See* Bertane, *The Assessment of Public Utility Property in California,* 20 UCLA L Rev 419, 442-43 (1973). Apportionment is not a means of determining the value of property in a given geographical area; rather, as its name suggests, it is a means of apportioning an indivisible *unit value* to geographical areas for purposes of taxation. If an entity is properly includable in a unit for valuation, apportionment by determining the separate value of that entity is inconsistent with the premise of indivisibility.

In a case involving state income taxation of a multinational corporation, the Supreme Court of the United States rejected an argument remarkably similar to that of Southern Pacific:

> " [A]ppellant argues that its foreign subsidiaries are significantly more profitable than it is, and that the three-factor [income apportionment] formula, by ignoring that fact and relying instead on indirect measures of income such as payroll, property, and sales, systematically distorts the true allocation of income between appellant and the subsidiaries. The problem with this argument is obvious: the profit figures relied upon by the appellant are based on precisely the sort of formal geographical accounting whose basic theoretical weaknesses justify resort to formula apportionment in the first place. * * * [W]henever a unitary business exists, 'separate [geographical] accounting, while it purports to isolate portions of income received in various States, may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale. Because these factors of profitability arise from the operation of the business as a whole, it becomes misleading to characterize the income of the business as having a single identifiable 'source.' ' "

*Container Corp. v. Franchise Tax Bd., supra,* 463 US at 181 (quoting in part from *Mobil Oil Corp. v. Commissioner of Taxes,* 445 US 425, 438, 100 S Ct 1223, 63 L Ed 2d 510 (1980)). Southern Pacific has not presented sufficient evidence to persuade us that the profitability of Cottonbelt is independent of its integration with Southern Pacific or that that profitability can to any extent be meaningfully isolated from that of Southern Pacific.

■ Finally, we are not persuaded that the use of the NATA apportionment formula is unfair or has produced an unfair result. The formula could be applied by every taxing state without taxing more than 100 percent of the corporation's property; moreover, the NATA apportionment formula was specifically developed for the taxation of railroad property. The factors employed in the formula reflect investment in, and usage of, the various parts of the railroad system. Line-haul tonnage and terminal activity, which Southern Pacific argues are the primary determinants of profitability, are two of the three factors in that formula. We also note that line-haul tonnage, the asserted basis of Cottonbelt's profitability, has in this case been weighted much more heavily than has terminal activity (roughly 45 percent to 15 percent). On the record before us, we are not persuaded that the use of such a formula is unfair or that the result that it produces does not reflect the "true" value of Southern Pacific's Oregon property.

The decision of the Tax Court is affirmed.