Argued and submitted October 6, 1988, the decision of the Tax Court affirmed
February 22, 1989

## ALASKA AIRLINES, INC.,
*Appellant,*

*v.*

## DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2496; SC S34859 (Control))

## USAIR, INC.,
*Appellant,*

*v.*

## DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2497; SC S34860)
(Cases Consolidated)

769 P2d 193

Richard M. Botteri, Portland, argued the cause for appellants. On the brief and reply brief were Robert L. Weiss and James P. Draudt, respectively, and Richard M. Botteri, and Weiss, DesCamp & Botteri, a Professional Corporation, Portland.

Elizabeth S. Stockdale, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder,

Solicitor General, and Jerry Bronner, Assistant Attorney General, Salem.

Before Peterson, Chief Justice, and Linde, Campbell,* Carson, Jones and Gillette, Justices, and Van Hoomissen, Justice pro tempore.

CARSON, J.

---

* Campbell, J., retired December 31, 1988.

## CARSON, J.

Alaska Airlines, Inc. (Alaska), and Pacific Southwest Airlines, Inc. (PSA),[1] appeal a decision of the Oregon Tax Court upholding 1986 property tax assessments determined, in part, on the basis of time spent in the air by aircraft that flew over, but did not land in, Oregon.[2]

In 1986, Alaska and PSA were so-called "regional airlines" qualified to do business in Oregon. Each operated commercial airline service in western states, including Oregon, Washington and California. Alaska scheduled flights that landed in and departed from the Portland International Airport, whereas PSA operated aircraft that flew into and out of Portland, Eugene, Medford and Redmond. Forty-nine employees worked in Alaska's Oregon facilities, and 74 employees worked in PSA's Oregon facilities. For each airline these employees represented about 1 percent of its total work force. Each airline maintained its corporate headquarters, flight-training facility, major repair facility and base-maintenance facilities in states other than Oregon. Each was incorporated in a state other than Oregon.

Alaska and PSA also operated flights that originated from cities outside Oregon and that flew over Oregon, without landing, to destinations in other states, e.g., nonstop from Seattle to Los Angeles. These flights, called "overflights," represented 45 to 49 percent of each airline's total flight time over Oregon. As might be expected, overflights involved little contact with ground facilities, and the State of Oregon did not provide regular services to overflights. Regular government service to overflights only occurred through radio communication with and radar tracking by air traffic controllers of the Federal Aviation Administration.

For ad valorem property tax purposes, the Department of Revenue (Department) is required to assess certain designated utilities and companies, including airlines, and to

---

[1] As the result of a merger occurring on April 9, 1988, USAir, Inc., has been substituted as the real party in interest for Pacific Southwest Airlines, Inc. In the interests of consistency with the proceedings below, we refer to appellant as Pacific Southwest Airlines, Inc. (PSA).

[2] The appeals of Alaska Airlines, Inc., and Pacific Southwest Airlines, Inc., were consolidated by order of this court dated April 11, 1988.

apportion the assessment among qualifying Oregon counties. ORS 308.505 to 308.660. By statute, the Department is permitted to value the airlines' property, both within and without Oregon, as a unit. ORS 308.555. It then must apportion a "fair" amount of the unit value to Oregon. *Southern Pacific Trans. Co. v. Dept. of Rev.*, 302 Or 582, 585, 732 P2d 18 (1987).

Alaska's and PSA's properties consisted of non-mobile (ground) and mobile (aircraft) properties constituting the total system properties of the airlines. The Department allocated to Oregon portions of the values of the total system properties of the airlines to determine each airline's 1986 property tax assessment. According to the airlines, allocating these portions involved the following steps:

First, the Department allocated to Oregon a portion of the value of each airline's ground property. These amounted to $204,000 and $687,000 for Alaska and PSA, respectively. These allocations and the method by which they were determined are not at issue.

Second, the Department allocated to Oregon a portion of the value of each airline's aircraft property. To determine these portions, the Department used the following formula:

$$\text{Allocation Percent} = \frac{\text{OR Ground} + \text{OR Flight} + \text{OR Flyover}}{\text{Total System Hours}}$$

OR Ground = Oregon ground time

OR Flight = Oregon flight time for aircraft landing in and departing from Oregon

OR Flyover = Flyover time for overflights

Total System Hours = All system flight and ground time wherever generated

"OR Ground," as the name suggests, represented the amount of time that aircraft spent on the ground in Oregon and was calculated as a standard one-half hour for each flight. "OR Flight" and "OR Flyover" represented flight time for aircraft that flew within the borders of Oregon "equated" to the type of aircraft flown. "OR Ground" also was "equated." "Equating" involved, in effect, crediting to more valuable aircraft

additional time over that actually spent in the air or on the ground.[3] The Department then derived the "Allocation Percent" for each airline's aircraft property by dividing the product of "OR Ground," "OR Flight" and "OR Flyover" by each airline's "Total System Hours," which simply represented all "equated" flight and ground time throughout each airline's system.

The Department next took the percentage that the value of each airline's aircraft property represented to the total system value of each airline. That figure was 81.8 percent for Alaska and 88.07 percent for PSA. It multiplied this percentage by the "Allocation Percent" derived through use of the formula above—5.3718 percent for Alaska and 3.5011 percent for PSA. The resulting product was multiplied by the total system value of each airline to allocate to Oregon a portion of the value of each airline's aircraft property—$21,091,000 for Alaska and $25,439,000 for PSA. These were added to the ground property allocations to determine the 1986 property tax assessments.

Alaska and PSA argue that the Department's method of allocating aircraft property resulted in invalid tax assessments. They specifically object to the use of overflight time to determine a portion of the value of aircraft property. Phrased in terms of the above formula, they argue that the Department should not have included "OR Flyover" in the numerator. They argue that the Department's formula violated the Due Process Clause of the Fourteenth Amendment and the Commerce Clause of the United States Constitution and ORS 308.550(2).[4]

---

[3] The following example illustrates "equating": Among its various aircraft Alaska operated the B727-200 and the MD-83. The MD-83 was worth 2.47543 times what the B727-200 was worth and so was assigned an "equating factor" of 2.47543. The "equating factor" assigned to the B727-200 was 1.0000. An hour "equated" for an MD-83 thus became 2.47543 "equated" hours; an hour "equated" for a B727-200 remained one hour, but "equated."

[4] Alaska and PSA also raise an argument based on Article I, section 32, of the Oregon Constitution (uniformity of taxation). They failed to raise this argument in the Tax Court, however. We decline to address the issue. *Leiser v. Sparkman,* 281 Or 119, 122, 573 P2d 1247 (1978).

To the extent that plaintiffs raise a separate statutory issue of situs under ORS 308.515 and 308.550(2), we likewise do not consider this assertion because it was not raised to the Tax Court.

The Tax Court did not agree. *Alaska Airlines v. Dept. of Rev.,* 10 OTR 518 (1987). We discuss, in turn, each of the airlines' arguments and affirm for the reasons set forth below.[5]

## I. DUE PROCESS

Alaska and PSA argue that the State of Oregon did not confer protection, opportunities or benefits on overflights. They argue that overflights did not generate revenue, use public facilities or cause commerce to be conducted in this state. They contend that "alleged benefits," including search and rescue services[6] and criminal law protection,[7] were "too nebulous and speculative to justify the taxation of overflights." In short, Alaska and PSA focus exclusively on overflights—they argue that overflights did not have a connection to or contact with this state sufficient to justify a tax under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[8]

This premise—that the Department assessed taxes against overflights—is the fly in the airlines' ointment. The Department did not assess overflights or specific aircraft; the Department assessed each airline's aircraft property based on a formula reflecting (in part) time spent in the air by that aircraft. The validity of each airline's tax assessment does not depend upon whether the state could have assessed a tax against overflights—the state did not do so. Rather, the validity depends upon whether each airline's aircraft property was part of a *unit* with situs in this state and whether the state fairly apportioned that unit.

Alaska's and PSA's aircraft properties constituted integrated enterprises whose business was to transport passengers and cargo between cities in western states. These

---

[5] Because the airlines' statutory argument concerns a statute codifying constitutional standards, we first address those constitutional standards.

[6] *See* ORS chapters 401 and 491.190.

[7] *See* ORS 131.205 and 131.215(1). *See also* ORS 493.160 and 493.991(2) (prohibiting operation of aircraft recklessly or while under influence of drugs), which may afford some protection to commercial aircraft.

[8] Amendment XIV, section 1, of the United States Constitution (the Due Process Clause) provides, in part:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law."

enterprises conducted operations into and out of Oregon airports, with each enterprise having regular contact with this state through aircraft landings, departures, boarding and deplaning of passengers and loading and unloading of cargo. They enjoyed the benefits and protection of Oregon criminal laws, the provision of search and rescue services if needed and opportunities for further commerce through contacts with Oregon. Alaska's and PSA's aircraft properties functioned as units with sufficient contact with this state to sustain the power of the state to levy an apportioned ad valorem tax. *Braniff Airways v. Nebraska Board,* 347 US 590, 600-02, 74 S Ct 757, 98 L Ed 967 (1954).

■　　　Although the units of the airlines' aircraft properties thus had situs in Oregon, the Due Process Clause also required that the Department fairly apportion the units. The state may not tax extraterritorial value. *Norfolk & W.R. Co. v. Tax Comm'n.,* 390 US 317, 324-25, 88 S Ct 995, 19 L Ed 2d 1201 (1968); *Southern Pacific Trans. Co. v. Dept. of Rev., supra,* 302 Or at 588-89. The question remains whether overflight time could be used to apportion Alaska's and PSA's aircraft properties.

■　　　Whether an overflight occurs "in" a state has not before been raised under the Due Process Clause. *But cf. State v. Northwest Airlines,* 213 Minn 395, 7 NW2d 691 (1942), *aff'd sub nom Northwest Airlines v. Minnesota,* 322 US 292, 64 S Ct 950, 88 L Ed 1283 (1944) and *Northwest Airlines v. State Tax Appeal Bd.,* 720 P2d 676 (Mont 1986). Nevertheless, the question is not difficult. A formula apportioning aircraft property on the basis of time spent in the air or on the ground is analogous to a formula apportioning railroad rolling stock on the basis of miles of track. *See Norfolk & W.R. Co. v. Tax Comm'n., supra.* Just as rolling stock moves from state to state, requiring reference to fixed, quantifiable factors such as miles of track for apportionment purposes, so too do aircraft used in interstate transportation require reference to quantifiable factors. Time is such a factor, and the airlines do not object to a formula apportioning on the basis of time when restricted to aircraft that landed at or departed from an Oregon airport.

But aircraft are, of course, different from rolling stock. Rolling stock and railroad track touch the ground, but

aircraft in flight, obviously, do not. Overflight aircraft did not touch the ground in Oregon *at all*—and hence the airlines' argument that overflight time did not occur "in" this state for purposes of the 1986 tax assessments.

This argument, however facially appealing, does not persuade. It has, to paraphrase Justice Hugo L. Black on a different matter, a superficial plausibility that cloaks a lack of substance. *See United States v. Wallace Co.*, 336 US 793, 799, 69 S Ct 824, 93 L Ed 1042 (1949). Alaska and PSA concede that air time of aircraft landing at or departing from Oregon airports could have been included in the numerator of the Department's apportionment formula (so-called "ramp to ramp" time). They concede that such time could have been used to apportion aircraft property. But their premise—that overflights did not occur "in" this state—and their conclusion—that overflight time could not have been used to apportion aircraft—lead to an anomaly. The airlines do not explain how what was indistinguishable when it occurred—ramp to ramp time and overflight time were both, by definition, time spent in the skies above this state—became distinguishable because ramp to ramp aircraft landed at or departed from this state.

Alaska and PSA also do not explain where an overflight was if not "in" this state while traveling within the borders of this state. "In" would seem to be the answer because the airlines concede (as they must) the applicability of Oregon criminal law to overflights. Although Alaska and PSA argue that the value represented by an overflight should have been taxed to the domiciliary state, that argument does not address whether the overflight was "in" this state for purposes of apportioning aircraft property.

We conclude that the Department properly included overflight time in the numerator of the apportionment formula. Each airline's aircraft property, considered as a unit, had situs in this state. Moreover, inclusion of overflight time to apportion aircraft property did not tax extraterritorial value. For apportionment purposes, an overflight was "in" this state.

## II. COMMERCE CLAUSE

■     The United States Supreme Court stated the test for the validity of a state tax under the Commerce Clause in *Complete Auto Transit, Inc. v. Brady,* 430 US 274, 97 S Ct 1076, 51 L Ed 2d 326 (1977).[9] A state tax does not offend the Commerce Clause when the tax is: (1) Applied to an activity with a "substantial nexus" with the taxing state; (2) fairly apportioned; (3) nondiscriminatory against interstate commerce; and (4) fairly related to services provided by the state. *Complete Auto Transit, Inc. v. Brady, supra,* 430 US at 279; *see also Budget Rent-A-Car v. Multnomah Co.,* 287 Or 93, 104-05, 597 P2d 1232 (1979). This test for determining whether a tax is valid under the Commerce Clause is similar to the test for determining whether a tax is valid under the Due Process Clause. *See Norfolk & W.R. Co. v. Tax Comm'n., supra,* 390 US at 323-25; *Southern Pacific Trans. Co. v. Dept. of Rev., supra,* 302 Or at 588. Alaska and PSA argue that the 1986 taxes were not applied to activities with a substantial nexus with this state, fairly apportioned or fairly related to services provided by this state.

*Substantial Nexus*

■     For a substantial nexus to exist, there must be "some definite link, some minimum connection," between the taxing state and the taxed activity.[10] *Nat. Bellas Hess v. Dept. of Revenue,* 386 US 753, 756, 87 S Ct 1389, 18 L Ed 2d 505 (1967) (quoting *Miller Bros. Co. v. Maryland,* 347 US 340, 344-45, 74 S Ct 535, 98 L Ed 744 (1954)). As they did in arguing under the Due Process Clause, the airlines try to shift the focus to the view that the state taxed overflights rather than the units of which overflights were parts.

---

[9] Article I, section 8, clause 3, of the United States Constitution provides, in part, that "Congress shall have Power * * * [to] regulate Commerce * * * among the several States."

[10] The overlap between the Due Process and Commerce Clauses is most manifest in the "substantial nexus" requirement of the latter. Professor Tribe writes:

"* * * The degree of 'connection,' 'contact,' or 'nexus' between the taxing state and the interstate commerce taxed is also the fundamental measure of whether or not a state tax violates the commerce and due process clauses. * * * [T]o the extent that a state can point to a substantial connection with a particular aspect of interstate commerce, it can also demonstrate that its program is consistent with the commerce and due process clauses." L. H. Tribe, *American Constitutional Law* 446 (2d ed 1988).

In *Adams Express Company v. Ohio,* 165 US 194, 17 S Ct 305, 41 L Ed 683 (1897), the U.S. Supreme Court recognized that under the Commerce Clause a state may value as a unit an integrated business enterprise operating in interstate commerce. In *Adams Express,* the property was personal and not physically connected, yet it was used in concert to carry on the interstate commerce of the express company. The Court looked to "a unity of use, not simply for the convenience or pecuniary profit of the owner, but existing in the very necessities of the case—resulting from the very nature of the business." *Adams Express Company v. Ohio, supra,* 165 US at 222.

Alaska's and PSA's aircraft properties functioned as did the property of the express company in *Adams Express.* Each airline's aircraft property comprised part of a "unity of use"—the business of transporting passengers and cargo—and so was used in an integrated and coordinated manner to carry on interstate commerce. The consequence must be as it was in *Adams Express*—the activities of the airlines' units of aircraft properties established the substantial nexuses required under the Commerce Clause.

*Fair Apportionment*

■ The Commerce Clause requires that an apportionment formula bear a rational relationship, both on its face and as applied, to property values connected with the taxing state. *Norfolk & W.R. Co. v. Tax Comm'n., supra,* 390 US at 325. A state may not tax an activity carried on outside its borders. *See Complete Auto Transit, Inc. v. Brady, supra,* 430 US at 282 (quoting *Memphis Gas Co. v. Stone,* 335 US 80, 96-97, 68 S Ct 1475, 92 L Ed 1832 (1948) (Rutledge, J., concurring)); *Southern Pacific Trans. Co. v. Dept. of Rev., supra,* 302 Or at 589 (state may not tax extraterritorial value). The airlines again characterize the taxes as, in part, taxes assessed against overflights—and they again mischaracterize the taxes.

■ The Department assessed portions of the values of the airlines' aircraft properties. Aircraft were on the ground or in the air at any given time; the Department's formula reflected this fact. More precisely, the formula reflected that portion of time that each airline's aircraft property spent on the ground or in the air *in Oregon.* This was a fair manner of determining the extent of each airline's aircraft activity in

Oregon, and it was a fair manner of apportioning property based on the presence of each airline's aircraft.

Alaska and PSA argue, however, that the formula resulted in values wildly at odds with values that might have been achieved by formulas used to apportion in seven other western states. These formulas did not include overflight time in their numerators. The airlines draw the conclusion that these formulas showed "a uniform practice contrary to Oregon's," thus rendering the Department's formula suspect under the Commerce Clause.

Although there is merit in the airlines' argument, *see Southern Pacific Trans. Co. v. Dept. of Rev., supra,* 302 Or at 589 (commerce clause may require apportionment formula not substantially different from formulas used by other states), the airlines tell an incomplete story. The ultimate test is whether the taxing state itself apportions fairly. *Id.* The seven other western states might have failed to apportion to themselves full values consistent with the Commerce Clause. Because the Department's formula resulted in fair apportionment of the values of the airlines' aircraft properties, the use of different formulas by other states was not in itself reason for this state to have changed its apportionment practice.

Phrased in terms of the "internal and external consistency tests" of the U.S. Supreme Court, *see, e.g., Goldberg v. Sweet,* ___ US ___, 109 S Ct 582, 102 L Ed 2d 607 (1989), the formula used by the Department complied with the fair apportionment requirement of the Commerce Clause. The formula was internally consistent because, were every state to have used it, no multiple taxation would have resulted—only 100 percent of aircraft value would have been taxed. Moreover, it was externally consistent because it reflected only in-Oregon aircraft activity.

*Fair Relation to Services Provided*

■     The inquiry into whether a tax bears a fair relationship to services provided by the taxing state is similar to the inquiry into whether the tax was assessed against an activity with a substantial nexus with the state. *Commonwealth Edison Co. v. Montana,* 453 US 609, 625-26, 101 S Ct 2946, 69 L Ed 2d 884 (1981); *see also Budget Rent-A-Car v. Multnomah*

*Co., supra,* 287 Or at 105 n 6. This fourth prong of the *Complete Auto Transit* test, however, imposes the additional limitation that "the *measure* of the tax must be reasonably related to the extent of the contact [with the taxing state], since it is the activities or presence of the taxpayer in the State that may properly be made to bear a 'just share of state tax burden.'" *Commonwealth Edison Co. v. Montana, supra,* 453 US at 626. (Emphasis in original.) (Citations omitted.) The tax must be assessed in proportion to benefits, opportunities and protection conferred or afforded by the taxing state, but it need not be assessed only as *compensation* for services provided. *Id.* at 622-24. The Commerce Clause does not demand that a state tax only on the basis of *quid pro quo. See Budget Rent-A-Car v. Multnomah Co., supra,* 287 Or at 105 n 6.

■    The Department assessed Alaska and PSA based on the presence, as reflected in air and ground time, of aircraft property in this state. The taxes were proportioned to the extent of the activities of the airlines' units of aircraft properties within this state. While engaging in these activities, the airlines enjoyed benefits, opportunities and protection conferred or afforded by this state—search and rescue services, opportunities for further commerce and the protection of Oregon criminal laws—and so could be made to bear a "just share of state tax burden." The taxes were fairly related to services provided by this state.

　　　We conclude that the Department's inclusion of overflight time in the numerator of its apportionment formula did not violate the Commerce Clause.

## III.   STATUTORY ISSUE

■    ORS 308.550(2)[11] requires the Department to use a

---

[11] ORS 308.550(2) provides:

　　"If the value of any property having a situs in this state, of a company operating both within and without the state, cannot fairly be determined in the manner prescribed in subsection (1) of this section, the department may use any other reasonable method to determine the proper proportion of the entire property assessable for taxation in this state."

ORS 308.550(2) has not been changed since its enactment in Oregon Laws 1955, chapter 735, section 2.

"reasonable method" when it uses an apportionment method other than that prescribed by ORS 308.550(1). Alaska and PSA argue that the Department did not use a reasonable method.

The "reasonable method" requirement of ORS 308.550(2) codifies Due Process and Commerce Clause standards. *Southern Pacific Trans. Co. v. Dept. of Rev., supra,* 302 Or at 588. An apportionment formula that complies with these standards complies with the requirement that the Department use a reasonable method in apportioning property. Because the Department's formula complied with the federal constitutional standards, it complied with ORS 308.550(2).

The decision of the Tax Court is affirmed.