PACIFICORP POWER MARKETING,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4592)

Oral argument was held June 17, 2003, in the courtroom of the Oregon Tax Court, Salem.

David L. Canary, Garvey Shubert and Barer, Portland, filed the Motion for Summary Judgment and argued the cause for Plaintiff.

Marilyn J. Harbur and James C. Wallace, Assistant Attorneys General, Department of Justice, Salem, filed the Cross Motion for Summary Judgment and argued the cause for Defendant (the department).

Decision for Defendant rendered February 18, 2004.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This matter is before the court on a motion for summary judgment filed by Plaintiff (taxpayer) and a cross-motion for summary judgment filed by the Department of

Revenue (the department). The underlying action of the department about which taxpayer complains was an Opinion and Order issued August 1, 2002 (hereinafter the O & O).

The O & O was issued pursuant to the central assessment authority of the department. In its O & O, the department concluded that taxpayer had an assessable interest in an electricity-generating facility or contracts related to that facility. Taxpayer disagreed with that conclusion and argued, in the alternative, that the valuation of any assessable interest was too high. The deputy director of the department in fact reduced the assessable value from $138,571,000 to $116,749,000. In its Complaint in this court, taxpayer made no complaint regarding the level of valuation but only contested whether it is taxable at all by reason of its relationship to the Klamath Facility (as hereinafter defined).

## II. FACTS

The facts are established by uncontested affidavits and related exhibits. Taxpayer is a company that either purchases or generates electricity that is then sold to others. In furtherance of that business, taxpayer and certain affiliated companies entered into a set of agreements with the City of Klamath Falls, Oregon (the city) pursuant to which:

1. A gas-fired steam generating facility (the Klamath Facility) would be constructed with proceeds from taxable and nontaxable bonds issued by the city.

2. Legal title to the Klamath Facility is in the city and the Klamath Facility is located on land leased by the city from a third party.

3. Taxpayer and affiliated companies perform services and supply goods related to the operation of the Klamath Facility, pursuant to contracts with the city or others.

4. Taxpayer has the contractual right to purchase a certain amount of the output of electricity from the Klamath Facility, which taxpayer can and does resell to others.

5. Through its agent, the city also entered into agreements with other purchasers of electricity calling for

the sale of output from the Klamath Facility to such purchasers, to be resold by them to others.

## III.  ISSUE

Is taxpayer subject to taxation given its interests, if any, in the Klamath Facility and its contractual rights relating to the Klamath Facility?

## IV.  ANALYSIS

At the outset, there are some basic points on which there is no disagreement. The first of those is that taxpayer is a company subject to the provisions of ORS 308.505 to 308.665[1] (the central assessment statutes). Secondly, taxpayer has neither challenged the valuation determined by the department nor any apportionment of taxable property. Thirdly, this case does not involve any assertion that the city has any tax liability or that its interests in the Klamath Facility are subject to tax. The sole question is whether, given its various rights in respect of the Klamath Facility, taxpayer can be said: (1) to own, hold, or otherwise use[2] some property, whether real or personal, tangible or intangible,[3] so as to be assessable under the central assessment statutes, or (2) to hold the Klamath Facility under a lease or other interest or estate less than a fee simple, so as to be assessable under ORS 307.110.

---

[1] All references to Oregon Revised Statutes (ORS) are to 2001.

[2] ORS 308.517(1) states:

"Except as provided in subsections (2) and (3) of this section, the Department of Revenue shall assess to the property user all property owned, leased, rented, chartered or otherwise held for or used by it in performing a business, service or sale of a commodity enumerated in ORS 308.515."

[3] ORS 308.510(1), in relevant part, states:

" 'Property,' as used in ORS 308.505 to 308.665, includes all property, real and personal, tangible and intangible, used or held by a company as owner, occupant, lessee, or otherwise, for or in use in the performance or maintenance of a business or service or in a sale of any commodity, as set forth in ORS 308.515 * * * but does not include items of intangible property that represent claims on other property including money at interest, bonds, notes, claims, demands and all other evidences of indebtedness, secured or unsecured, including notes, bonds or certificates secured by mortgages, and all shares of stock in corporations, joint stock companies or associations."

## A. *Central Assessment Statutes*

In the department's action on this matter the property in question was described as:

> "the tangible and intangible property of PPM and its wholly owned subsidiary Pacific Klamath Energy, Inc., (PKE) in and to the Klamath Co-generation Project (Facility).
>
> "* * * * *
>
> "PPM and PKE have several contracts to manage, operate, and maintain the Facility and to supply natural gas to and purchase 47 percent of the electricity from the facility. Under ORS 308.515, the department has assessed all of the tangible and intangible property used by PPM in Oregon. The department has not assessed PPM's business. PPM's and PKE's intangible property rights in and to the subject facility are property and are not evidences of indebtedness, such as bonds and notes. Consequently, the subject intangible property is included in the broad scope of the centrally assessed utility statutes. Whether these rights are associated with tangible property that might otherwise be exempt under ORS 307.090 or may not result in a possessory interest in the subject facility under ORS 307.110(1) is not controlling. *See Portland General Electric Co. v. State Tax Commission*, 249 Or 239 (1968)."

■ Because taxpayer is subject to the central assessment statutes, it is covered by a "complete and comprehensive scheme of taxation." *State of Oregon v. Wells, Fargo & Co.*, 64 Or 421, 432, 130 P 983, 985 (1913).[4] One of the most significant distinguishing features of this scheme of taxation is that intangible personal property is assessed. Further, such intangible property and other property may be assessed to the "user" of such property as well as to an owner. In other cases: (1) only real and tangible personal property are subject to taxation, under ORS 307.030; (2) assessments are made in

---

[4] More accurately, the scheme is one of assessment for taxation rather than "a scheme of taxation." *Southern Pacific Trans. Co. v. Dept. of Rev.*, 295 Or 47, 52, 664 P2d 401, 403 (1983) (so stating in clarification). Assessment is used in the sense of placing a value on the property, rather than in the sense of levying a tax on the property. Assessments made by the department are provided to the relevant county assessors who enter the assessment on the assessment and tax rolls of the appropriate counties, following which taxes are levied and then collected. ORS 308.635.

the name of the owner of property, ORS 308.105, or sent to the owner, ORS 311.250; and (3) tax liability is either *in rem* or that of the owner of the property only. ORS 311.455; *Mark v. Dept. of Rev.*, 12 OTR 369 (1993).

■■ ORS 307.030 states that in the case of centrally assessed properties, intangible property is subject to assessment **and taxation**. *See* ORS 307.030(2). That is confirmed by ORS 308.635(4), which states, with regard to assessment of "property" subject to the central assessment statutes:

> "Taxes shall be levied and collected on assessments of properties so made, certified and apportioned in the same manner as taxes on other properties are levied and collected and at the same time and by the same officers."

The statutes make clear that intangible property is assessed and taxed. It is not simply considered in the valuation and taxation of tangible personal or real property.

■■ It is also noteworthy that unlike the scheme of taxation of real property, which creates an *in rem* obligation, enforceable only by foreclosure of a lien, the taxes levied on centrally assessed properties are a debt due from the "user," which may become a lien on all property of the user. ORS 311.655, ORS 308.505 to 308.665. Although an intangible contract right to use or benefit from the real property of another is taxable to a centrally assessed company, the real property itself is not burdened with a lien for the tax due from the user. Rather, the contract right itself and all other property *of the user* is burdened with the tax lien.

B. *Central Assessment Liability Exceeds That Under ORS 307.110*

■ Oregon case law has established that a centrally assessed company may be a user of property of governments even where such company would not be considered to have the type of possessory interest subject to taxation under ORS 307.110 or statutes similar to it. In *PGE Company v. Tax Com.*, 249 Or 239, 437 P2d 827 (1968), the centrally assessed taxpayer had constructed a dam on the Deschutes River and was required to obtain easements and flowage easements over and upon lands of the Confederated Tribes of the Warm Springs and other lands of the United States. In the course of

its analysis regarding taxability and valuation of those easements, the court noted that the taxpayer's easements used to locate powerhouses created a possessory interest but the flowage easements appeared nonpossessory. That distinction, between possessory and nonpossessory interests, was not controlling for the Supreme Court. Likewise, at the trial court level, the court made a clear distinction between taxation under ORS 307.060 (the counterpart to ORS 307.110 when federal rather than local government ownership is involved) and taxation under ORS 308.505 to 308.664. *PGE Company v. Commission*, 2 OTR 222, 226 (1965). This court also concluded that, quite apart from taxability under ORS 307.060, the central assessment statutes would include "PGE's interest in the federal lands because PGE is at least using, operating and occupying them in the operation of the hydroelectric project * * *." *Id.* at 227.

■     It is clear under Oregon law that when a centrally assessed company has the right to use property of another, that right is taxable, even if not a possessory interest. Further, when such a company has contractual rights to acquire or dispose of property or services, those intangible contractual rights themselves are taxable when used in the centrally assessed business. Here, the power purchase agreement and the other agreements relating to the Klamath Facility are intangible property that is subject to taxation regardless of whether the contracts, individually or in the aggregate, create a possessory interest in the Klamath Facility taxable by reason of ORS 307.110.

In *PGE*, the Supreme Court spent little time or concern with the precise nature of the contractual rights possessed, although the court concluded they probably were nonpossessory. 249 Or at 249. The court went on to the issue of valuation. In this case, the issue of valuation is not raised. Here, however, the department has clearly articulated a claim or theory that the rights of taxpayer in the constellation of contracts surrounding the Klamath Facility are taxable intangible property. The court agrees with that position of the department and need not reach the question of whether the interest of taxpayer under those contracts amounts to a "lease or other interest or estate less than a fee simple" in the

Klamath Facility under ORS 307.110.[5] Nor is it necessary to address what appears to be the department's assertion that matters of public policy permit or require taxation here apart from the actual language of the statutes.

## C. *Taxpayer's Use of Property Argument*

■        Taxpayer argues that the department's position on taxability of contract rights is incorrect. First, taxpayer attempts to establish that it is taxable only if it uses the Klamath Facility property. Taxpayer then argues that no contract or group of contracts provide for such use of the Klamath Facility. In that regard, taxpayer is responding to one of two positions advanced by the department that the contractual rights amount to an interest taxable under ORS 307.110. However those arguments by taxpayer are not responsive to the point that it is the intangible property rights represented by or inherent in the contracts themselves that is the property taxable under the central assessment statutes.

## D. *Taxpayer's Argument on Nontaxability of Intangible Property*

In its responsive brief, taxpayer addressed the department's arguments that the contract rights themselves are the taxable property in this case. First, taxpayer appears to argue that intangible property is not taxable under the central assessment statutes but enters into consideration only insofar as the intangible property may enhance the value of real or tangible personal property. That is not the law in Oregon, although it may be in other states to which taxpayer indirectly refers. As stated above, ORS 307.030(2), ORS 308.510, and ORS 308.635(4) read together specifically provide that intangible personal property is subject to taxation.

---

[5] In its argument based on ORS 307.110, taxpayer cites *Power Resources Cooperative v. Dept. of Rev.*, 330 Or 24, 996 P2d 969 (2000). *Power Resources* involved ORS 307.060, a statute parallel in purpose to ORS 307.110. *Power Resources* was not litigated or decided under the central assessment statutes.

## E.    *Taxpayer's "Unit" of Property Argument*

■    Next, taxpayer argues that the statutes do not authorize taxation of intangible property independently and apart from real and tangible personal property. Taxpayer states, "intangible personal property is not independently and separately assessed in Oregon except as part of **the unit** of real and tangible property subject to ORS 308.515." Again, there is no support for this position in the Oregon statutes. ORS 308.510 does not require intangible personal property to be connected to tangible personal property or real estate in order for the intangible property to be taxable. The statute is broad and inclusive in its scope and mentions intangible property without qualification, except that claims on the property of others are not considered taxable property. Taxpayer does not contend that the contractual rights in question here are claims on the property of another.

■    Further, a unit of property does not have the significance claimed by taxpayer. A unit of property need not exist before any individual item of property, tangible or intangible, can be centrally assessed and taxed. To the extent that the concept of a unit is found in the central assessment statutes, it is used in describing a method of valuation and not as a precondition to taxability. *See* ORS 308.555. The existence of a unit is not a *sine qua non* to taxation of any particular type of property. Rather the concept of a unit is a tool in valuation and, even then, is a concept the department has the choice to employ under ORS 308.555. The unit method is not a requirement the department must follow or use. The unit method does not deal with the combination of different property types for purposes of making all such property types subject to taxation. It is, instead, a method for valuing a bundle of property interests and types that are operated together. Although statutes in other states may consider intangible property only for the purpose of the valuation of other property types, Oregon includes intangible property in the bundle subject to assessment and taxation.

Beyond the statutory provisions already cited, the proof of this basic conclusion is found in the statutory provisions relating to collection of taxes levied on centrally assessed property. As stated above, such taxes are both an

obligation of the user and a lien on the property assessed and other property of the centrally assessed "user." In the statutory collection scheme, the county clerks are empowered to take collection action, including issuance of units of attachment and garnishment and recourse to all laws on provisional remedies against **all** real or **personal** properties of a taxpayer. Recourse is not limited to real property or tangible personal property, as it would be if the company was not centrally assessed. *See* ORS 311.655 and ORS 307.030.

Taxpayer claims that *Alaska Airlines, Inc. v. Dept. of Rev.*, 307 Or 406, 769 P2d 193 (1989) and the *PGE* case support its position that a unit must exist if intangible property is to be taxed. In *Alaska Airlines*, the department promulgated an apportionment formula for use under the central assessment statutes. For airlines, the formula included consideration of miles that an aircraft flew over Oregon, even if it did not land or take off in Oregon. In the context of the airlines' claim that such a method violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the court observed:

> "This premise—that the Department assessed taxes against overflights—is the fly in the airlines' ointment. The Department did not assess overflights or specific aircraft; the Department assessed each airline's aircraft property based on a formula reflecting (in part) time spent in the air by that aircraft. The validity of each airline's tax assessment does not depend upon whether the state could have assessed a tax against overflights—the state did not do so. Rather, the validity depends upon whether each airline's aircraft property was part of a *unit* with situs in this state and whether the state fairly apportioned that unit."

*Id.* at 411 (emphasis in original).

Taxpayer here relies on the reference to unit in that language as establishing that some unit must exist to which intangible property relates if that intangible property is to be within the scope of the central assessment statutes. However, taxpayer does not assert a federal constitutional claim under the Due Process Clause as to the apportionment of its properties. The observations of the Oregon Supreme Court on the application of that clause to apportionment questions

are not, therefore, relevant to the issues on construction of the statutory provisions on central assessment found in this case.

Taxpayer points out that in *PGE*, the court observed that, "except for the transmission line rights of way, the rights granted to PGE by the Warm Springs Indians must be **valued as a unit**." 249 Or at 248 (emphasis added). However, that discussion of a unit had nothing to do with the unit valuation methodology set out in ORS 308.555 or any concept of a required connection between intangible property and a unit of tangible personal or real property. The language in the decision, relied upon by taxpayer, was that, **with the exception** of the transmission line rights of way, the rights granted to PGE by the Warm Springs Indians must be **valued** as a unit. Taxpayer claims that the case required a limit to exist before the intangible flowage easements could be included in the assessment. Taxpayer has misread *PGE* In the language to which taxpayer points, the court was not addressing whether the flowage easement could be taxed. It had already concluded the easement could be taxed and had done so without any resort to a unit concept. In the quoted language, the court was addressing only the method of valuation, and particularly looking at an aggregate price paid for a number of rights. In addition to saying the rights granted by the Warm Springs Indians must be valued as a unit, the court also noted that: (1) transmission line rights of way could be separated; and (2) the error was valuing the flowage easements separately from interests in the appurtenant land. But the particular concern of the court is revealed in its concluding statement and footnote on this issue. The court, in relevant part, stated:

"[W]e agree with the commission that PGE's interest in the tribal lands, except the transmission line rights of way, must be assessed as an **entity**.[10]

---

"[10]  The **consideration** for the rights of way for transmission lines and roads used in connection therewith **was stated separately** in PGE's agreement with the Warm

Springs Indians. **The consideration for all other easements granted by said agreement was unsegregated.**"

*P.G.E.*, 249 Or at 249 & n 10 (emphasis added).

From that language, it becomes clear that the court did not use the term unit as a technical term used in the central easement statutes but as a synonym for "entity." Further, the reason for focus on an entity did not have to do with the type of property involved or the relation of the flowage easements to other types of property. What concerned the court was the fact that the **consideration** for all of the property in one unit, or entity, had been paid in an unsegregated amount. The court directed all easements that had been paid for together be **valued** together, and apart from the right of way easements that had been separately paid for. Assets were combined together for valuation because they had been paid for together, not because a unit was a precondition to taxation.[6]

F.   *Taxpayer's Alternate Arguments or Taxpayer's Policy and Constitutional Arguments*

Taxpayer suggests that permitting taxation of intangibles in the way proposed by the department will present problems related to determination of the situs of the intangible property. That may be. However, that problem is one either of determining what portion of property is used in this state or one of allocation or apportionment of taxable value. The department has relatively broad statutory authority to deal with such issues and no allocation or apportionment defect has been asserted by taxpayer in this case.

Finally, taxpayer asserts that the department has acted unconstitutionally in taxing it but not taxing other purchasers of power from the Klamath Facility.[7] The central

---

[6] That conclusion is further buttressed by the fact that the concluding language and footnote quoted above follows immediately after a discussion by the court that under the central assessment statutes, "[i]t is, therefore, unnecessary to describe with precision the nature of PGE's rights in the tribal lands." *PGE*, 249 Or at 249. Also, the interests taxed in *PGE* were being assessed separately from the system or unit value for the company generally. The court found no problem with that.

[7] Taxpayer asserts, and the department admits, that the other purchasers of power from the Klamath Facility have not been assessed. Taxpayer's argument is

assessment statutes do not, on their face, make any distinction between entities like taxpayer and the other purchasers from the Klamath Facility, each of whom is a governmental subdivision created under the laws of a state other than Oregon. What has occurred here is therefore, at most, differential enforcement of a facially neutral statute. On that point, there is governing case law.

In *Freightliner Corp. v. Dept. of Rev.*, 275 Or 13, 549 P2d 662 (1976), the Oregon Supreme Court was presented with a contention that certain omitted property assessments were invalid under the Oregon constitutional tax uniformity provisions and the Fourteenth Amendment because the assessor did not institute similar assessments against other taxpayers alleged to be similarly situated taxpayers. The Oregon Supreme Court held that the taxpayer was required to show an intentional and systematic pattern of discrimination involving something that amounts to an intention, or the equivalent of fraudulent purpose, to disregard the fundamental principle of uniformity. Errors in judgment by the tax administrator, even if shown, would not be sufficient to grant relief. The court in *Freightliner* relied on an earlier case where the stated test required a showing of discriminatory or selective enforcement. *See Penn Phillips Lands v. Tax Com.*, 247 Or 380, 430 P2d 349 (1967).

Here however, taxpayer has done no more than plead that so far it has been assessed and other contract purchasers have not. The department does not contest that it is proceeding against taxpayer but not against other purchasers of power from the Klamath Facility. Taxpayer has not pleaded, or asserted by affidavit, that this differential treatment is based on impermissible criteria or illegitimate motives or that it is intentional and systematic or derives from a fraudulent purpose. Absent such assertions, the court cannot adopt taxpayer's position. In cases of differential enforcement of the tax statutes, there must be something more than a mere assertion of differential treatment. Not every difference is actionable. Real differences in property, for example, sometimes justify different taxation. Further, differences in

made under Article I, section 1, and Article IX, section 1, of the Oregon Constitution.

enforcement decisions may be a product of proper considerations as to expense, susceptibility of taxpayer to process, tactical considerations on priority of litigation, or other legitimate considerations. If taxpayers could avoid taxation merely by showing different results from the process, a grave danger to the revenue of the state, beyond the intent of the uniformity clauses, would exist.

## V.   CONCLUSION

For the foregoing reasons, the court concludes that the department's cross-motion for summary judgment should be granted and taxpayer's motion for summary judgment should be denied. Now, therefore,

IT IS ORDERED that Defendant's Cross-Motion for Summary Judgment is granted, and

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is denied. Costs to neither party.